TEXAS & PACIFIC RAILWAY COMPANY v. JOHN H. WOODS.

Decided March 24, 1897.

1.  **Passenger—Direction to Jump from Train—Employe—Evidence.**
See opinion for evidence held insufficient to show that the person who directed plaintiff, a passenger carried past her station, to jump from train was an employe of defendant, and under which that hypothesis should not have been submitted, but should have been withdrawn.

2.  **Carrying Past Station—Charge.**
When a passenger was injured in disembarking from a train stopped for that purpose after she had been carried past her station—the evidence conflicting as to whether the train stopped at such station and how long—it was improper to charge that the carrier would be liable for such injuries if it carried plaintiff beyond her destination and put her off the train at an unusual stopping place.

3.  **Damages—Injury to Wife—Mental Suffering of Husband—Charge.**
Where the charge on measure of damages was meager, an instruction that a husband suing for injuries to his wife could not recover damages for his own mental suffering therefrom should have been given on request.

4.  **Passenger—Place to Alight—Degree of Care—Charge.**
A carrier is not bound to furnish the passenger an absolutely safe place to alight, even at station.

5.  **Same.**
Where the injury was received in jumping from the cars to the ground at direction of another, the safety of the place for disembarking is only incidentally involved, the carrier being liable only in case the direction was given by its servant.

APPEAL from the District Court of Wood County.  Tried below before Hon. FELIX J. McCORD.

*T. J. Freeman* and *Cate & Teagarden,* for appellant.

*Giles, Stafford & Harris* and *B. B. Hart,* for appellee.

KEY, ASSOCIATE JUSTICE.— *Opinion.*—Appellee's wife was a passenger on a train of appellant's railway, her destination being Mesquite station.  She did not get off at that station, but the train was stopped after passing the station several hundred yards, and Mrs. Woods got off by jumping from the platform of the car to the ground.

It is charged by the plaintiff that the defendant failed to stop the train at Mesquite station a sufficient length of time to enable Mrs. Woods to alight therefrom, and that when the train was stopped beyond the station she was directed and told by one of defendant's employes to hurry up and jump from the train.

Mrs. Woods testified that when the train passed the station she was standing near the door of the car with her little child and a satchel, and soon after a white man dressed in dark clothes asked her if she wanted to get off at Mesquite; that the man left the car and soon returned, and as the train slowed up he took her child and told her to hurry up, and that she proceeded as he directed and, when he told her to, jumped from the platform to the ground, injuring herself in the manner afterwards detailed by her.

The uncontroverted testimony shows that all the train employes were dressed in dark blue clothes with brass buttons on them and wore caps.

Mrs. Woods did not pretend to say that the man who assisted her in getting off the train was so dressed, nor did she or any other witness pretend to say that he was an employe of the defendant.  On the contrary, the conductor testified that one of the passengers—a stranger to him—came and told him that a lady had been carried beyond Mesquite station, where she desired to get off; that he immediately took steps to stop the train, and when he got back to the coach the lady was traveling in she and the passenger referred to were on the ground; that he inquired if everything was all right, and receiving an affirmative answer, either from the lady or the passenger, he gave the signal and caused the train to move on.

The train crew consisted of the conductor, engineer, fireman, one brakeman and a porter—the latter being a negro.

The brakeman testified that he did not assist the lady in getting off the train, and did not know for what purpose the train stopped until he asked the conductor after the train had gone on.

It is contended by appellant that the court should not have submitted to the jury that phase of the case presented by the plaintiff's allegation that the person who directed Mrs. Woods to jump from the train was an

employe of appellant, because there was no testimony that would justify the submission of that issue. And also that the court should have given a special charge requested by appellant directing the jury to allow no recovery for injuries caused by Mrs. Woods' jumping from the train.

In our opinion both of these positions are correct. The plaintiff wholly failed to show that the person referred to was an employe on the train, and the defendant showed by uncontroverted testimony that he was not.

For these errors the judgment will be reversed.

The court's charge is subject to some of the other criticisms urged against it.

The third paragraph of the charge reads as follows: "If you believe from the evidence that defendant company, through its agents and servants, carried plaintiff's wife beyond said Mesquite, her point of destination, and she was put off the train by defendant's servants in charge of said train at a place other than a usual stopping place, and she was injured thereby, the defendant company would be liable for such injuries as she may have received."

As to whether or not the train stopped, and, if so, how long, there was a conflict in the testimony.

This charge authorized the plaintiff to recover if his wife was carried beyond the station, even though the train may have stopped at the station a sufficient length of time for her to have gotten off—which of course is not the law. And while in another paragraph the qualification that should have been stated in the third paragraph was given, the two were entirely disconnected; and while we do not hold that in this respect reversible error was committed, we are of the opinion that the charge did not state the law of the case as clearly and distinctly as should have been done.

In view of the meager charge given by the court on the measure of damages, we think it would have been quite proper for the court to have given the defendant's special charge No. 2, telling the jury that the plaintiff was not entitled to recover anything for his own mental suffering.

Perhaps some of the language used by appellee's counsel in his closing argument may have been unwarranted by the testimony, but the bill of exception does not show the objection that was made to it, and it is not probable that it will be repeated, as it referred to the question which we hold should not have been submitted to the jury.

Nor should the court have told the jury that the defendant was required to furnish passengers an absolutely safe place to alight from trains. A reasonably safe place is all that is required, even at depots. But the question of the safety of the place where Mrs. Woods got off is only incidentally involved in this case. The gist of her cause of action—if any she has—lies in the fact of being wrongfully carried beyond her station and directed by appellant's employe to jump off. The jump might have injured her at the depot, as well as where it occurred. But

if she did not make it under the direction or at the instance of some one representing appellant, it is not responsible for the consequences flowing therefrom.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*